[928 NE2d 396, 902 NYS2d 14]

RACEPOINT PARTNERS, LLC, et al., Appellants, v JPMORGAN
CHASE BANK, N.A., Respondent.

Argued January 6, 2010; decided April 1, 2010

## POINTS OF COUNSEL

*Bartlit Beck Herman Palenchar & Scott LLP* (*James B. Heaton, III,* of the Illinois bar, admitted pro hac vice, *Cindy L. Sobel* and *Katherine G. Minarik* of counsel), *Joseph C. Smith, Jr.,* Denver, Colorado, and *Kleinberg, Kaplan, Wolff & Cohen, P.C.,* New York City (*David Parker* and *Marc Rosen* of counsel), for appellants. I. The plain meaning of section 4.02 of the indenture agreement establishes that Enron did not satisfy its covenant by filing fraudulent reports. (*UnitedHealth Group Inc. v Wilmington Trust Co.,* 548 F3d 1124; *Securities & Exch. Commn. v Kalvex Inc.,* 425 F Supp 310; *Morlee Sales Corp. v Manufacturers Trust Co.,* 9 NY2d 16.) II. The plain meaning of "required to file with the SEC pursuant to section 13 or 15 (d) of the Exchange Act" is supported by the express incorporation of Trust Indenture Act § 314 (a). (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.,* 11 NY3d 146; *Bluebird Partners, L.P. v First Fid. Bank, N.A. N.J.,* 85 F3d 970.)

*Simpson Thacher & Bartlett LLP,* New York City (*Thomas C. Rice, David J. Woll, Alan C. Turner, Janet A. Gochman* and *Devin F. Ryan* of counsel), for respondent. I. The Appellate Division correctly held that there was no default under section 4.02 of the indenture agreement. (*Brooke Group v JCH Syndicate 488,* 87 NY2d 530; *Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470; *UnitedHealth Group Inc. v Wilmington Trust Co.,* 538 F Supp 2d 1108; *Nichols v Nichols,* 306 NY 490; *Raner v Goldberg,* 244 NY 438; *Flagg v Yonkers Sav. & Loan Assn., FA,* 396 F3d 178; *AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.,* 11 NY3d 146.) II. Separate and independent grounds exist upon which the dismissal of plaintiffs' complaint may be affirmed. (*Sega v State of New York,* 60 NY2d 183; *Hartley v Eagle Ins. Co. of London, England,* 222 NY 178; *Putman High Yield Trust v Bank of*

*N.Y., 7 AD3d 439; Prudence-Bonds Corp. v State St. Trust Co., 202 F2d 555; Elkind v Chase Natl. Bank of City of N.Y., 259 App Div 661; Hazzard v Chase Natl. Bank of City of N.Y., 159 Misc 57, 257 App Div 950, 282 NY 652; Taussig v Clipper Group, L.P., 13 AD3d 166; Jordan Panel Sys. Corp. v Turner Constr. Co., 45 AD3d 165; Elliott Assoc. v J. Henry Schroder Bank & Trust Co., 655 F Supp 1281, 838 F2d 66; Midfirst Bank, SSB v C.W. Haynes & Co., Inc., 893 F Supp 1304.)*

*Pillsbury Winthrop Shaw Pittman LLP,* New York City (*F. Joseph Owens, Jr., Edward Flanders* and *John E. Davis* of counsel), for American Bankers Association, amicus curiae. I. Neither section 4.02 of the indenture agreement nor Trust Indenture Act § 314 (a) imposed any obligation on Enron to comply with the Securities Exchange Act. (*Zeffiro v First Pa. Banking & Trust Co.,* 623 F2d 290; *Affiliated Computer Servs., Inc. v Wilmington Trust Co.,* 565 F3d 924; *UnitedHealth Group Inc. v Wilmington Trust Co.,* 548 F3d 1124; *Bluebird Partners, L.P. v First Fid. Bank, N.A. N.J.,* 85 F3d 970; *LNC Inv., Inc. v First Fid. Bank, N.A.,* 935 F Supp 1333; *Myer v Shields & Co.,* 25 AD2d 126; *People v Kin Kan,* 78 NY2d 54; *Sharon Steel Corp. v Chase Manhattan Bank, N.A.,* 691 F2d 1039.) II. Adopting plaintiffs-appellants' novel interpretation of Trust Indenture Act § 314 (a) would impose new duties on obligors and trustees. (*Sharon Steel Corp. v Chase Manhattan Bank, N.A.,* 691 F2d 1039.)

## OPINION OF THE COURT

PIGOTT, J.

On February 7, 2001, the energy company Enron executed an indenture agreement with Chase Manhattan Bank (Chase), naming Chase as the indenture trustee for the holders of certain Enron notes. The agreement contained, in section 4.02, a standard provision setting forth a covenant by Enron

"[to] file with the Trustee [i.e. Chase], within 15 days after it files the same with the SEC [Securities and Exchange Commission], copies of its annual reports and of the information, documents and other reports . . . which the Company [i.e. Enron] is required to file with the SEC pursuant to Section 13 or 15 (d) of the [Securities] Exchange Act. Delivery of such reports, information and documents to the Trustee is for informational purposes only and the

> Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates). The Issuer also shall comply with any other provisions of Trust Indenture Act Section 314 (a)."

The agreement also set forth various circumstances or events that would constitute default by either party, including failure by Enron to comply with this provision, if not corrected within 60 days of notification by Chase.

In December 2001, in the wake of the major accounting fraud scandal with which it has become synonymous, Enron filed for bankruptcy. Thereafter, plaintiffs Racepoint Partners, LLC, and Willow Capital-II, L.L.C., bought approximately $1 billion of the notes from their holders. Plaintiffs, which, as secondary holders of the notes, are vested with the claims and demands of the sellers, then brought this common-law action against Chase alleging, among other things, breach of contract. Plaintiffs claim, first, that Enron defaulted under the indenture agreement and, second, that Chase had actual knowledge of this default and that its failure to notify Enron and the noteholders of the default constituted breach of the agreement.* The issue in this appeal is the allegation of contractual default by Enron in filing reports that were false.

Plaintiffs point to the fact that Enron agreed in section 4.02 to file with Chase copies of all reports that it was "required to file with the SEC pursuant to Section 13 or 15 (d) of the [Securities] Exchange Act." Section 13 of the Act requires publicly traded companies to keep records accurately reflecting their transactions and assets, and to file annual and quarterly reports with the Securities and Exchange Commission (see 15 USC § 78m). Plaintiffs argue that because the financial reports filed by Enron with Chase were inaccurate and did not comply with federal securities law, they were not the reports Enron was "required to file with the SEC." Plaintiffs posit that, by filing these same fraudulent reports with Chase, Enron failed to satisfy its section 4.02 covenant, and thus defaulted.

---

* On a similar theory, plaintiffs also allege that Chase breached its fiduciary duty to the noteholders. Plaintiffs concede that the dismissal of their breach of contract cause of action is fatal to the breach of fiduciary duty cause of action.

Chase moved to dismiss the complaint under CPLR 3211. Supreme Court denied Chase's motion. The Appellate Division reversed, granting the motion (57 AD3d 378 [2008]). We granted leave to appeal (12 NY3d 706 [2009]), and now affirm.

Section 4.02 of the indenture agreement is a mandated provision based on the requirements of section 314 (a) (1) of the Trust Indenture Act of 1939:

> "Each person who, as set forth in the registration statement or application, is or is to be an obligor upon the indenture securities covered thereby shall . . .

> "file with the indenture trustee copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the [Securities and Exchange] Commission may by rules and regulations prescribe) which such obligor is required to file with the Commission pursuant to section 13 or section 15 (d) of the Securities Exchange Act of 1934 [15 USC § 78m or § 78o (d)]; or, if the obligor is not required to file information, documents, or reports pursuant to either of such sections, then to file with the indenture trustee and the [Securities and Exchange] Commission, in accordance with rules and regulations prescribed by the Commission, such of the supplementary and periodic information, documents, and reports which may be required pursuant to section 13 of the Securities Exchange Act of 1934 [15 USC § 78m], in respect of a security listed and registered on a national securities exchange as may be prescribed in such rules and regulations" (codified at 15 USC § 77nnn [a] [1]).

Plaintiffs concede that the parties' intent in section 4.02 may be equated with congressional intent with respect to section 314 (a) of the Trust Indenture Act of 1939. In drafting the Trust Indenture Act, Congress intended simply to ensure that an indenture trustee was provided with up-to-date reports on a company's financial status, by requiring the company to send the trustee a copy of filed financial reports. In the 1930s, when section 314 (a) was drafted, computer-based technologies, whereby copies of SEC reports can now be obtained, did not exist.

The legislative history of section 314 (a) suggests that Congress intended to create a delivery requirement and no

more. The 1939 House Report highlighted the legislators' concern that trustees and bondholders at the time did not receive periodic reports from companies issuing bonds.

"In a substantial portion of the indentures . . . the issuer was under no obligation to file an annual report with the indenture trustee. None of the indentures . . . required the transmission to the bondholders of periodic reports, such as stockholders customarily receive. None of them established machinery for the transmission of such reports . . . ." (HR Rep 1016, 76th Cong, 1st Sess, at 35 [1939].)

It is apparent that section 314 (a) was designed to mandate such a mechanism of delivery of reports to indenture trustees. The same House Report, observing that in many cases a company "will already be required to file periodic reports with the [Securities and Exchange] Commission under section 13 or section 15 (d)," stated that the bill under consideration "merely requires that copies of such reports . . . be filed with the indenture trustee" (HR Rep 1016, 76th Cong, 1st Sess, at 35).

As federal courts have observed, when considering indenture agreement provisions very similar to the one at issue here,

"the provision merely requires the company to transmit to the trustee copies of whatever reports it *actually* files with the SEC . . .

"[A]ny duty actually to file the reports is imposed 'pursuant to Section 13 or 15 (d) of the Exchange Act' and *not* pursuant to the indenture itself. The provision does not incorporate the Exchange Act; it merely refers to it in order to establish which reports must be forwarded. . . .

"[It] impose[s] nothing more than the ministerial duty to forward copies of certain reports, identified by reference to the Exchange Act, within fifteen days of actually filing the reports with the SEC" (*UnitedHealth Group Inc. v Wilmington Trust Co.*, 548 F3d 1124, 1128-1130 [8th Cir 2008]; *see also e.g. Affiliated Computer Servs., Inc. v Wilmington Trust Co.*, 565 F3d 924, 930-931 [5th Cir 2009]; *American Stock Transfer & Trust Co. v Par Pharm. Cos., Inc.*, 2009 WL 1754473, *4-5, 2009 US Dist LEXIS 52602, *10-13 [SD NY 2009]).

It is clear therefore that indenture agreements containing the required delivery provisions pursuant to section 314 (a) refer to the Securities Exchange Act only to identify the types of report that should be forwarded to indenture trustees. They do not create contractual duties on the part of the trustee to assure that the information contained in any report filed is true and accurate. That is simply not the mission or purpose of the trustee or the contract under which it undertakes its duties.

Of course, companies have a duty to file accurate reports with the SEC. That obligation, however, derives from the Securities Exchange Act, not from indenture agreements.

Our holding that section 4.02 of the indenture agreement simply embodies a delivery requirement, and does not imply a duty on the part of the trustee to assure the filing of accurate reports or risk default, is consistent with the limited, "ministerial" functions of indenture trustees (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d 146, 157 [2008]), and with the plain language of section 4.02, which states that "[d]elivery of such reports, information and documents [filed with the SEC] to the Trustee is for informational purposes only." Plaintiffs' proposed interpretation, on the other hand, would require indenture trustees to review the substance of SEC filings, so as to reduce the risk of liability, greatly expanding indenture trustees' recognized administrative duties far beyond anything found in the contract.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and JONES concur; Judge SMITH taking no part.

Order affirmed, with costs.